***********
The Full Commission has reviewed the prior Order and prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and are subject to the provisions of the North Carolina Workers' Compensation Act, and the Commission has jurisdiction of the parties and the subject matter.
2. The plaintiff was an employee of the defendant, Carlisle Plastics, Inc., and Sedgwick CMS was the third-party administrator for the employer.
3. The plaintiff alleges that she sustained an at-work back injury on June 28, 1999.
4. The plaintiff has not returned to work for Carlisle Plastics, Inc., or any other employer.
 ***********
Based upon the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACTS
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was fifty years old, had a twelfth grade education, and had received some subsequent training and education, including a teacher training certificate and a computer keyboarding certificate. She had been employed for Carlisle Plastics for approximately thirteen years, and her job at the time of the accident on June 28, 1999, was lead packer. Carlisle makes plastic trash bags. This position of lead packer consisted of obtaining supplies, making sure all the lines had their own supplies, filling in for other employees on their breaks, and ensuring that the trash bags were produced and placed in boxes. Prior to her employment with Carlisle Plastics, plaintiff had worked in the textile industry.
2. On June 28, 1999, plaintiff was working a twelve hour shift and had to lift a heavy box. When she lifted the box, she felt a pull in her back. She reported the incident to Mike Dixon, her section leader, and he laughed, saying, "You're falling apart." Mr. Dixon was the only person. to whom she was supposed to report her back injury because he was her section leader. An employee was supposed to report her injury to her immediate supervisor (her section leader). The section leader is responsible for reporting the injury to the supervisor (shift manager). Although Dixon testified 2 years after the incident that he did not recall plaintiff telling him, he did not deny that she did. His testimony that if plaintiff had told him about the incident he would have filled out an incident report is found not credible. David Michael Bailey's testimony concerning plaintiff's 1995 back claim is not relevant except to show that when his lower-level supervisor filled out a report concerning the 1995 claim, the report came to him. Mr. Bailey was a shift manager.
3. After lifting the box and injuring her back, plaintiff asked Mike Dixon to give her some help with her work but he did not. So, she returned to her job as Mr. Dixon had told her to do. Plaintiff continued to work, although she was in pain. She did not stay out of work because she was afraid of losing her job. When she got home on June 28, 1999, her back was hurting so badly that her husband had to put ice packs on it. Plaintiff worked on June 29 and 30, 1999. Evidence of a medical report of Dr. Omatta M. Sirisena, dated the day after the specific traumatic incident, does not impeach plaintiff's credibility. That report merely reflects the results of an echo Doppler study ordered earlier and contains no information from plaintiff. Evidence of a back injury in 1993 for which the 1995 claim was filed also does not impeach plaintiff's testimony.
4. Following her injury on June 28, 1999, plaintiff continued working as scheduled until July 5, 1999, when she first sought medical treatment for her back injury at an emergency room. She went to the emergency room because she reported her injury to defendant employer as she was supposed to do and no one did anything. When she went to the emergency room, she reported that she had injured her back at work. Thereafter, she sought treatment from her family physician, Dr. Sirisena.
5. Dr. Sirisena examined plaintiff on July 8, 1999. At that time, plaintiff was experiencing low back pain, with pain radiating into her left leg. During a follow-up examination on July 12, 1999, Dr. Sirisena excused plaintiff from work and ordered an MRI.
6. Based upon the results of the MRI, which revealed a herniated disc at L3-L4, Dr. Sirisena referred plaintiff to Dr. Macedo. Dr. Macedo treated plaintiff conservatively. However, the conservative treatment failed to improve plaintiff's symptoms and she eventually came under the care of Dr. David Miller.
7. Ultimately, Dr. Miller performed lumbar fusion surgery at L3-L4. As of October 16, 2001, plaintiff continued to have neurological symptoms in her left leg and occasional symptoms in her right leg. She walked using a cane. As of that date, plaintiff was incapable of earning wages in any employment.
8. Plaintiffs herniated disc at L3-L4 was caused by the lifting incident on June 28, 1999. As a result of that incident, plaintiff was rendered incapable of earning wages from any employer from July 5, 1999, through the date of the hearing before the deputy commissioner.
 ***********
Based upon the foregoing stipulations and findings of fact the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On June 28, 1999, plaintiff sustained a compensable specific traumatic incident of the work assigned, arising out of and in the course of her employment with Carlisle Plastics. N.C. Gen. Stat. § 97-2(6).
2. As a result of her injury on June 28, 1999, plaintiff is entitled to payment of total disability compensation at the rate of 66 2/3% of her average weekly wage as of the date of her injury. Such compensation shall be paid from July 5, 1999, and continuing thereafter until plaintiff returns to work or until Order of the Industrial Commission allowing defendants to cease payments of total disability compensation. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to payment of all medical expenses incurred for treatment of her June 28, 1999, injury, including expenses incurred for treatment ordered or provided by Drs. Sirisena, Macedo and Miller. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff total disability compensation at the rate of 66 2/3% of her average weekly wage as of the date of her injury on June 28, 1999. Said compensation shall be paid from July 5, 1999, and continuing thereafter until plaintiff returns to work or until Order of the Industrial Commission allowing defendants to cease payments of total disability compensation. To the extent that this amount has accrued, it shall be paid in a lump sum, subject to the attorney's fee approved in paragraph 3.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her June 28, 1999, injury, including expenses incurred for treatment provided or ordered by Drs. Sirisena, Macedo and Miller.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff in paragraph I is approved for plaintiffs counsel and shall be paid as follows: 25% of the lump sum due plaintiff shall be deducted from that amount and be paid directly to plaintiff's attorney. Thereafter, defendants shall pay plaintiff's counsel, as an attorney's fee, every fourth payment that shall become due to plaintiff.
4. Defendants shall pay the costs.
 ORDER
Pursuant to Rule 611, this claim shall immediately be set for hearing before a deputy commissioner for the sole purpose of determining plaintiff's average weekly wage under N.C. Gen. Stat. § 97-2(5). In the alternative, the parties shall have 30 days from the date of this Order to enter a stipulation as to plaintiff's average weekly wage or offer evidence by stipulation upon which plaintiff's average weekly wage may be determined.
This 26th day of September 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER